NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3659
_____

MOHAMAD IBRAHIM SHNEWER,
                                        Appellant

v.

UNITED STATES OF AMERICA
_____


On Appeal from the United States District Court
for the District of New Jersey
District Court No. 1-13-cv-03769
District Judge: Honorable Robert B. Kugler

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
July 13, 2017

Before: SMITH, *Chief Judge*, NYGAARD, and FUENTES, *Circuit Judges*

(Filed: August 9, 2017)
_____

OPINION*
_____


*This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

SMITH, *Chief Judge.*

Mohamad Shnewer appeals a District Court order denying a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Shnewer claims that he received ineffective assistance because trial counsel failed to pursue and obtain a plea deal. The District Court determined that Shnewer failed to show that he was prejudiced by trial counsel's conduct. For the following reasons, we will affirm the District Court's order.

I.

A jury convicted Shnewer under 18 U.S.C. § 1117 for his role in a conspiracy to murder members of the United States military, and of attempted possession of a firearm in furtherance of the conspiracy. The United States District Court for the District of New Jersey sentenced him to life in prison for the conspiracy conviction and a consecutive term of 360 months for the firearm conviction. Shnewer appealed. We vacated the attempted possession conviction and associated sentence because the Government conceded that the attempted possession charge was not a legally cognizable crime. *United States v. Duka*, 671 F.3d 329, 353 (3d Cir. 2011). We affirmed both the conspiracy conviction and the life sentence. *Id.* at 356.

Shnewer filed a *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. §2255 and later retained counsel. In his § 2255 motion,

2

Shnewer advanced various claims of ineffective assistance of trial counsel, which the District Court denied. Shnewer sought reconsideration pursuant to Fed. R. Civ. P. 59(e) and 60(b)(6), and the District Court denied that motion as well. Shnewer filed a timely notice of appeal, and we granted a certificate of appealability as to Shnewer's claim that trial counsel rendered ineffective assistance by failing to pursue and obtain a plea deal.

When the District Court considered the ineffective assistance claim at issue here, it declined to hold an evidentiary hearing. *See Shnewer v. United States*, No. 13-3769 (RBK), 2016 WL 867461, at \*21 (D.N.J. Mar. 7, 2016). The District Court instead based its decision on written declarations from Shnewer, Rocco Cipparone (Shnewer's trial counsel), and William Fitzpatrick (the Assistant United States Attorney).

In his declaration supporting the §2255 motion, Shnewer stated that he told Cipparone that he was "very interested in any plea offer from the prosecution," *id.* at \*18 (quoting Shnewer Declaration), and that he would have accepted any offer that reduced the likelihood of a life sentence. He also indicated that Cipparone never told him about any discussions he had with the government attorney or any possible plea offers.

Cipparone's version of events differs. Cipparone maintains that Shnewer did not direct him to engage the government in plea negotiations. Nevertheless,

3

Cipparone initiated preliminary plea discussions with the prosecutor, who told Cipparone that any potential plea deal would need to be approved by then-United States Attorney Chris Christie. According to Cipparone, Fitzpatrick informed him that he would consider recommending to Christie a deal wherein Shnewer would plead guilty to the conspiracy charge in exchange for the dismissal of the charge for attempted possession of a firearm. Cipparone stressed that Fitzpatrick said that he would not recommend, and Christie likely would not approve, any deal preventing the Government from pursuing a sentence of life imprisonment.

Cipparone also stated that, in his experience, the United States Attorney's Office invariably communicated formal plea offers in writing, and he never received any formal written or oral offer. Cipparone characterized his discussions with Fitzpatrick as mere "negotiations and exploratory conversations." JA 81-82. Finally, contrary to Shnewer's factual allegations, Cipparone indicated that he kept Shnewer informed of his conversations with Fitzpatrick.

Fitzpatrick's declaration is consistent with Cipparone's description of the negotiations as preliminary and informal. He stressed that "[a]t no time did the Government ever provide a formal written plea agreement proposal." JA 84. Fitzpatrick indicated that the Government believed "a sentence of life imprisonment [to] be the only reasonable sentence in this case," JA 85, and would therefore seek to apply a terrorism enhancement, pursuant to USSG § 3A1.4,

4

which would render "the applicable guideline range . . . exclusively life imprisonment," *id.* He also stated that the Government would not agree to any plea deal that prevented the imposition of a sentence of life imprisonment.

After reviewing the three declarations, the District Court reached two conclusions. First, it determined that Fitzpatrick did not make a formal plea offer, and therefore held that Cipparone could not have been ineffective by failing to communicate a plea offer to Shnewer. *Shnewer*, 2016 WL 867461, at *17. Second, the District Court held that, even if Shnewer could show that Cipparone's performance was deficient due to his failure to pursue plea negotiations, Shnewer's claim would nonetheless fail because he could not show that he was prejudiced by Cipparone's conduct. *Id.* at *23–24.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 2255. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253(a). When reviewing a District Court's denial of a § 2255 motion, "we review legal determinations *de novo*, factual findings for clear error, and matters committed to the District Court's discretion for abuse thereof." *United States v. Doe*, 810 F.3d 132, 142 (3d Cir. 2015). Although the District Court's decision to grant an evidentiary hearing is discretionary, we have imposed limitations on the exercise of that discretion. *See, e.g.*, *United States v. Booth*, 432 F.3d 542, 545–46 (3d Cir. 2005). "The District

5

Court is required to hold an evidentiary hearing 'unless the motion and files and records of the case show conclusively that the movant is not entitled to relief.'" *Id.* (quoting *Gov't of V.I. v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989)). The District Court is also required to accept the "movant's factual allegations [as true] unless they are clearly frivolous on the basis of the existing record." *Id.* at 545.

Ineffective assistance of counsel claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court created a two-part test to determine whether a defendant's constitutional rights have been violated by trial counsel's performance. *Id.* at 687. First, "the defendant must show that counsel's performance was deficient." *Id.* This is typically done by demonstrating that counsel's performance fell below "prevailing professional norms." *Id.* at 688. Second, "the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. To do this, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Since *Strickland*, the Supreme Court has identified certain duties of defense counsel that, when not met, may give rise to ineffective assistance claims. In *Missouri v. Frye*, the Supreme Court held that among them is defense counsel's

6

duty to communicate formal plea offers to the defendant.[1] 566 U.S. 133, 145

(2012). In order to satisfy *Strickland's* prejudice requirement in such a case, a

defendant must show that, but for counsel's failure, there is a reasonable

probability "that the plea offer would have been presented to the court, that the

court would have accepted its terms, and that the conviction or the sentence, or

both, under the offer's terms would have been less severe than under the judgment

and sentence that in fact were imposed." *Lafler v. Cooper*, 566 U.S. 156, 164

(2012).

　　Thus, to show prejudice, Shnewer would need to demonstrate that it was

reasonably probable that Fitzpatrick would have offered him a particular plea deal,

that the deal would have resulted in a sentence less than life in prison, and that the

---

[1] Because of the preliminary and informal nature of the negotiations between the attorneys in his case, Shnewer attempts to rely upon some emerging case law from other jurisdictions, which appears to expand trial counsel's duty to convey *formal* plea offers, which the Supreme Court recognized in *Frye*, to informal offers and even, possibly, to informal plea negotiations. *See*, *e.g.*, *Carmichael v. United States*, 659 F. App'x 1013, 1022 (11th Cir. 2016) (deciding that trial counsel provided ineffective assistance when he failed to convey the government's informal plea offers to the defendant); *United States v. Polatis*, 2013 WL 1149842, at *10 n.16 (D. Utah Mar. 19, 2013) (noting approval of defendant's argument "that even if a firm offer is not conveyed to defense counsel, when the government indicates it is willing to negotiate a resolution in a case, defense counsel has a duty to engage in the negotiation process."). Here, we need not consider whether trial counsel has such a duty with respect to informal plea offers or preliminary plea negotiations because, as will be discussed, Shnewer cannot satisfy *Strickland*'s prejudice requirement in any event.

court would have accepted the deal's terms. Failure to show any one of those three facts is fatal to Shnewer's claim.

Shnewer fails to demonstrate that any possible deal would have reduced his sentence to less than life in prison. The declarations make clear that the only possible deal contemplated by the informal negotiations between Cipparone and Fitzpatrick would have been a guilty plea for the very same conspiracy charge on which Shnewer was ultimately convicted. That conviction always permitted the imposition of a life sentence.

When the District Court imposed Shnewer's sentence for the conspiracy charge, it considered the factors set out in 18 U.S.C. § 3553(a), including the seriousness and nature of the offense, protection of the public, and the potential for correctional treatment of the offender. *See* 18 U.S.C. § 3553(a)(2). The District Court concluded that those factors supported a life sentence. *Shnewer*, 2016 WL 867461, at *23. Despite trial counsel's arguments that Shnewer was a first-time offender and an otherwise productive member of society, the District Court concluded that Shnewer was "so deeply committed to this ideology and this desire to kill that he [could not] be rehabilitated." *Id*. at *7 (quoting Sent. Tr. 51:8-11, *republished at* JA 99).

Shnewer argues that, had he been convicted of the same charge pursuant to a plea offer rather than after a jury trial, less evidence pertaining to the § 3553(a)

8

factors would have been presented to the District Court. This is both speculative and unlikely. As Fitzpatrick noted in his declaration, the Government believed that life in prison was the only appropriate sentence. There is no support for a claim that Fitzpatrick would have declined to present any evidence at sentencing that could support such a sentence. Because the § 3553(a) analysis would have remained the same even if Shnewer had entered a plea rather than gone to trial, he cannot show that he was prejudiced by trial counsel's conduct.

Moreover, we are not persuaded by Shnewer's claim that the Government would have offered him a plea deal that permitted any possibility of advocating for a sentence of less than life in prison. Shnewer vigorously contends that the Government would have offered him a deal excluding the six-point victim enhancement. If Shnewer had actually been offered a plea agreement that excluded this six-point enhancement, he still would have faced the possibility of life imprisonment for the conspiracy conviction—but the reduction in offense level would have opened the door to allow him to argue for a sentence as low as 360 months.[2] The exclusion of the six-point victim enhancement is therefore the

---

[2] All federal offenses carry a base offense level, which may then be adjusted upward or downward. *See* U.S. Sentencing Guidelines Manual (USSG) § 1B1.1 (U.S. Sentencing Comm'n 2016). Shnewer's conspiracy conviction carried a base offense level of 33, *id.* § 2A1.5, and he received two upward adjustments: a twelve-point terrorism enhancement and a six-point victim enhancement. *See id.* §§ 3A1.4, 3A1.2. At 51, his offense level was well above 43, the point at which the sentencing guideline becomes exclusively life in prison. *See id.* ch.5 pt. A,

linchpin of Shnewer's argument. If the alleged plea offer did not include a firm commitment by the Government that it would not pursue the victim enhancement at sentencing, the deal would not have offered even a possibility of terms that were less severe than the judgment imposed. *See Lafler*, 566 U.S. at 164.

The only support Shnewer offers for his theory that he would have received a deal excluding the six-point victim enhancement is the silence of the prosecuting attorney's declaration on that point. When Fitzpatrick described the early-stage plea negotiations with Shnewer's lawyer, he discussed a clear intention to pursue a twelve-point terrorism enhancement, but he did not mention an intention to pursue the six-point victim enhancement. Shnewer relies on this omission as if it is proof of the contents of a more favorable deal. He argues, "[h]ere, in the plea offer as relayed by prosecutor Fitzpatrick, no mention was made of the official victim enhancement, only the terrorism enhancement. Taking this as being true, Shnewer's advisory Guidelines range, at least with respect to the minimum range, would be dramatically reduced." Appellant Br. at 27.

---

"Sentencing Table." Shnewer claims that he would have received a deal that excluded the six-point victim enhancement. It is undisputed that, if Shnewer had pled guilty, he would have received a three-point deduction for accepting responsibility. *See id.* § 3E1.1. These changes would bring Shnewer's offense level down to 42, which carries a sentencing guideline range of 360 months to life. *See id.* ch.5 pt. A, "Sentencing Table."

Shnewer overstates the record. He characterizes Fitzpatrick's declaration as a description of a "plea offer relayed by [the] prosecutor," *id*., but that description is not supported by the declaration itself:

> I engaged in informal plea discussions with Cipparone at an early point in the District Court proceedings . . . . During these discussions, I informed Cipparone that, at sentencing, the Government would take the position that the Sentencing Guidelines [sic] "terrorism enhancement," U.S.S.G. § 3A1.4, applied to Shnewer, and that if the Court agreed, the applicable Guidelines range would be exclusively life imprisonment.

JA 85.[3] Thus, Fitzpatrick did not say that he made Shnewer an offer, either formal or informal, and he did not say that any hypothetical offer would exclude the six-point victim enhancement. Fitzpatrick merely stated that he engaged in "informal plea discussions with Cipparone." JA 84.

Fitzpatrick's failure to mention the victim enhancement in no way implies that he would not have argued for that enhancement at sentencing; in fact, the evidence demonstrates that he *would* have pursued the victim enhancement even if he made Shnewer a plea offer. As the District Court observed,

> Fitzpatrick indicates that [the Government] would have never agreed to advocate to a sentence of less than life imprisonment and that the [G]overnment believed a life sentence was the only reasonable sentence in this case. Thus, it would certainly follow

---

[3] In his reply brief, Shnewer relies on this passage from the Fitzpatrick declaration to show that Fitzpatrick in fact offered him a deal, and that the deal excluded the six-point victim enhancement. *See* Appellant Reply Br. at 9.

that the [G]overnment would seek to include all relevant enhancements in attempting to secure [a life sentence for Shnewer].

*Shnewer*, 2016 WL 867461, at *22 n.5.

Shnewer argues that he should at a minimum be granted an evidentiary hearing to pursue this claim, contending that the District Court abused its discretion by "fail[ing] to take as true the factual allegations set forth in Shnewer's § 2255 motion and affidavit, and the record remains inconclusive as to whether Shnewer is entitled to relief." Appellant Br. at 29. In particular, Shnewer claims that the District Court failed to credit his assertion that the Government would have offered him a firm deal excluding the victim enhancement.

Although the District Court is generally required to accept a defendant's factual allegations as true, it is not obligated to accept allegations that are frivolous on the basis of the existing record. *See Booth*, 432 F.3d at 545. The record does not support Shnewer's claims. Both lawyers characterize the negotiations as preliminary, and Fitzpatrick's mere failure to mention the victim enhancement does not require the speculative leap that the enhancement would have been excluded from any potential plea offer. To credit Shnewer's representation of the facts, the District Court would have needed to depart considerably from the

12

existing record, and we cannot say that the court abused its discretion by declining to do so.[4]

IV.

In summary, Shnewer cannot show that, but for trial counsel's conduct, it is reasonably likely that he would have received a sentence less than life in prison. Accordingly, Shnewer cannot show that he was prejudiced by counsel's conduct and we will therefore affirm the District Court's order denying Shnewer's motion for relief under 28 U.S.C. § 2255.

---

[4] The District Court also held that Shnewer could not show that he would have been offered a particular plea deal because he offered no evidence to show that Christie, who had final authority over all plea deals, would have approved any deal proposed by Fitzpatrick. *Shnewer*, 2016 WL 867461, at *17. Shnewer objects to this reasoning on the grounds that some courts in other jurisdictions, including the Eleventh Circuit in *Carmichael*, have granted evidentiary hearings where a defendant has not been offered a formal deal. *See Carmichael*, 659 F. App'x at 1022. We need not consider this argument because we affirm the District Court's decision on other grounds.