303 Ga. 604
FINAL COPY

S18A0194.  WINSTON v. THE STATE.

BENHAM, Justice.

 William Winston appeals his convictions relating to the death of Caylen

Gooch.[1]   Appellant's sole enumeration of error is that the evidence was

insufficient to convict him of the crimes charged.  For the reasons set forth

below, we affirm his convictions.

Viewed in a light most favorable to upholding the jury's verdicts of

guilty, the record shows as follows.  At trial, several witnesses testified

appellant's nickname was "Waldo."  Jourdan Phillips, who was a close friend

---

[1] The crimes occurred on August 11, 2015.  On November 6, 2015, a Newton County grand jury indicted appellant on charges of malice murder, two counts of felony murder, armed robbery, aggravated assault, and possession of a firearm during the commission of a felony.  After a trial was conducted November 7-10, 2016, a jury returned verdicts of guilty on all counts.  On November 15, 2016, the trial court sentenced appellant to life in prison for malice murder, twenty years for armed robbery to be served consecutively to the life sentence, and five years for possession of a firearm during the commission of a felony to be served consecutively to the life sentence.  The two counts of felony murder were vacated as a matter of law.  Appellant filed a motion for new trial on December 14, 2016, and amended the motion on May 26, 2017.  The trial court denied the motion for new trial as amended on June 21, 2017.  Appellant filed a notice of appeal on July 11, 2017.  Upon receipt of the trial court record, the case was docketed to the term of this Court beginning in December 2017 and submitted for a decision to be made on the briefs.

of the victim, testified the victim, who drove a blue four-door sedan, picked him up around 9:00 p.m. or 9:30 p.m. on the night of August 10, 2015. After riding around for a short time, Phillips testified the victim received a call from appellant and they picked him up. Appellant then directed the group to the neighborhood of a woman named Red, who purportedly had money and wanted to buy marijuana from the victim. The three men waited for about an hour and a half, parking near two different community pool areas in Red's neighborhood;[2] however, Red never came to meet them. The three men drove away from Red's neighborhood, and the victim dropped appellant off near the house of a friend. After leaving appellant, Phillips testified he and the victim stopped by the victim's house and then went to the grocery store.

Phillips testified that while in the grocery store parking lot, the victim received a text from Red and a phone call from appellant, and, upon receiving these communications, they picked up appellant and drove back to Red's neighborhood. This time, appellant entered and exited Red's house two times over the course of about 25 minutes. When he came back out the second time, appellant told the other two he had Red's ATM card and they needed to drive

---

[2] Cell phone records showed that the victim's phone pinged in the vicinity of Red's neighborhood between 11:02 p.m. and 12:28 a.m. on August 10 and 11.

to an ATM in order to withdraw the cash. When they arrived at the ATM, appellant said he did not have the card, claiming to have left it behind. The group returned to Red's house briefly, but ultimately did not pursue any sort of drug transaction. Cell phone records showed the victim's phone pinged in the vicinity of Red's house between 3:07 a.m. and 3:36 a.m.

The three left Red's house, drove to a gas station and then drove to the victim's house where Phillips exited the car for the night. Phillips stated he was dropped off at the victim's house sometime after 3:00 a.m. on August 11. Phillips stated the victim called him around 3:30 a.m. to ask for Red's phone number and that was the last Phillips heard from the victim. The victim's cell phone records confirmed he called Phillips once and called Red six times between 3:36 a.m. and 4:03 a.m. The victim's girlfriend testified, and cell phone records confirmed, that she last spoke to the victim at 4:19 a.m. Appellant later admitted to police that he was in the car with the victim when he received his girlfriend's call. The victim's girlfriend testified that during this phone call, which lasted approximately a minute, she heard the victim ask someone named "Waldo" whether to turn left or right.

At 5:00 a.m., a woman called police upon finding the victim's body in her driveway located in Newton County. Neighbors, who lived near where the

body was found, testified that they heard gunshots around 4:20 a.m. and 4:28 a.m., as well as the screeching of car tires. One neighbor said he looked out of his window sometime after 4:00 a.m. and saw a black male dressed in a white tee shirt driving away in a four-door sedan.

A trail of blood spatter leading to the victim's body indicated he had walked approximately 75 to 100 yards and collapsed where his body was found. Police also observed tire skid marks near where the blood trail began and recovered one of the victim's personal items that was on the ground. Cell phone records showed that after the victim's body was discovered on August 11 at 5:00 a.m., his cell phone pinged at 7:30 a.m. and 8:23 a.m. in neighborhoods near the crime scene, and then pinged for the last time that day at 3:01 p.m. in Atlanta. When the police located the victim's car on the evening of August 11, it had a flat tire and was parked near where close friends of appellant lived and where appellant spent a significant amount of time. Investigators collected an empty wallet from inside the vehicle. Investigators also noted the car smelled of marijuana and observed blood spatter inside the car, primarily in the driver's seat. Although a cleaning agent, likely a bar of soap found inside the car, had been used in an attempt to clean the blood from inside the car, the volume of remaining blood in the driver's seat compartment

indicated the victim had been shot while sitting there. Some blood droplets were also found on the exterior of the vehicle. The autopsy revealed the victim was shot in the face at close range and shot in the back at an indeterminate range. The authorities were unable to locate a murder weapon.

Appellant's friend Cameron Driver testified he saw appellant at about 7:00 p.m. or 8:00 p.m. on August 11. He said appellant told him he had "f'd up" and was pacing and sweating. Driver said appellant showed him $70 and some marijuana. According to Driver, after an hour or so, appellant changed clothes and left the house.[3] Driver said that appellant left because they learned from a friend that the police were coming. Driver provided to police the clothes appellant changed out of — a white tee shirt, red jogging pants, and red sneakers.

Appellant was arrested on August 12, 2015. He made a statement to police which was recorded and played for the jury. Appellant told police that he rode around with the victim on the night in question and that the victim dropped him off at Driver's house, after dropping Phillips off first, in the early

___

[3] Appellant was close friends with Driver and another man who was deceased at the time of trial. Appellant often stayed at Driver's or the other man's house and the three shared clothes.

morning hours of August 11.[4]  Appellant denied being present when the victim was shot; however, appellant's version of the timeline of events placed him with the victim at the time the shooting took place.  Appellant stated he went to Atlanta during the afternoon of August 11.

Appellant contends that because there is no physical evidence tying him to the crime and because the evidence is circumstantial, the evidence was insufficient to convict.  We disagree.  "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-14-6.  See also Miller v. State, 303 Ga. 1, 3 (1) (810 SE2d 123) (2018).  Questions about the reasonableness of other hypotheses in cases based on circumstantial evidence are for the trier of fact to decide. See Nichols v. State, 292 Ga. 290, 291 (736 SE2d 407) (2013).  Here, the evidence showed appellant was the last person known to be with the victim at the time the killing took place.  By his own admission to police, appellant was with the victim when the victim's girlfriend called him at 4:19 a.m. on August 11.  This was confirmed by the victim's girlfriend who

_____

[4] Driver denied ever seeing appellant during the morning hours of August 11.

heard the victim say the name Waldo, which is appellant's nickname. Witnesses living in the neighborhood near where the body was found testified they heard gunshots around 4:20 a.m. and 4:28 a.m., and heard a car screech. One witness saw a black male in a white tee shirt driving away in a four-door sedan sometime after 4:00 a.m. The victim's cell phone continued to ping after his death in neighborhoods surrounding the crime scene and in Atlanta, where appellant told police he went that afternoon. Appellant told a friend on the day of the victim's death he had "f'd up" and showed his friend money and marijuana he had in his possession. When police found the victim's car, they found an empty wallet in addition to blood spatter evidence indicating the victim was shot in the driver's seat. The jury was authorized to find that this evidence, though circumstantial, was sufficient to exclude every other reasonable hypothesis save that of guilt. See Neely v. State, 302 Ga. 121 (1) (805 SE2d 18) (2017). And the evidence was sufficient to authorize a rational trier of fact to find appellant guilty of the crimes for which he was convicted. See Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

Judgment affirmed. All the Justices concur.

Decided May 7, 2018.

Murder. Newton Superior Court. Before Judge Benton.

Jennifer F. Arndt, for appellant.

Layla H. Zon, District Attorney, Melanie M. Bell, Jillilan R. Hall, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Jason M. Rea, Assistant Attorney General, for appellee.