304 Ga. 352
FINAL COPY

S18A0861.  GUFFIE v. THE STATE.

HUNSTEIN, Justice.

Following a jury trial, Quantavious Guffie was found guilty of malice

murder and various other offenses in connection with the shooting death of

Drexel Berry.[1]  Guffie appeals, raising claims of trial court error and ineffective

assistance of counsel; finding no error, we affirm.

The underlying facts of this case have already come before this Court in

the appeal of Guffie's co-defendant Freedell Benton, with whom Guffie shared

---

[1] On September 10, 2013, Guffie was indicted for malice murder, felony murder predicated on aggravated assault, felony murder predicated on possession of a firearm by a first offender probationer, aggravated assault with a deadly weapon, possession of a firearm by a first offender probationer, and possession of a firearm during the commission of a felony.  Following a January 2014 trial with co-defendant Freedell Benton, a jury found Guffie guilty of all offenses.  The trial court sentenced Guffie to life imprisonment without the possibility of parole for malice murder and a consecutive five-year term for possession of a firearm during the commission of a felony.  All other counts were vacated by operation of law or merged for sentencing.

Guffie filed a motion for new trial on January 14, 2014, which he amended on three occasions.  After a hearing, the trial court denied the motion as amended on December 21, 2016.  Guffie filed a timely notice of appeal to this Court on January 4, 2017, which was docketed to the April 2018 term and submitted for decision on the briefs.

a joint trial.  There, this Court summarized the facts as follows:

> Viewed in the light most favorable to the jury's verdict, the record shows that, on May 29, 2013, [Guffie] and his co-defendant, [Benton], were part of a group of 15 to 20 people hanging around an apartment complex located [in Fulton County] at 574 Cooper Street.  The victim, Berry, arrived at the complex with Joshua Smith, looking to purchase some marijuana.  The group informed Berry that they had no marijuana to sell, and Berry began to leave. One of the members of the group, Antoine Jester, was wheelchair bound, and informed others, including Benton, that Berry had played a role in putting Jester in a wheelchair, because Berry was one of the individuals involved in a prior shooting that had paralyzed Jester.  After speaking with Jester, Benton stepped into the street to flag down Smith's car and prevent Berry from leaving. Benton informed Berry that if he returned to the apartment complex, Benton would sell him some marijuana.  While Benton spoke to Smith and Berry, . . . Guffie entered one of the apartments and retrieved a handgun.  Berry agreed to return to the complex while Smith waited in the car, and Benton led him to a courtyard area behind the complex where Guffie joined them.
>
> Two eyewitnesses from the apartment complex who saw the men near the courtyard stated that[,] following a brief discussion between the three men, Berry began to run, while Benton and Guffie pursued and fired guns at Berry.  The three ran out of the witnesses' sight, but more shots could be heard coming from the courtyard.  A few minutes later, only Benton and Guffie emerged from the stairwell leading to the courtyard.
>
> A police officer found Berry at a house located at 580 Pryor Street. Berry had moved from the apartment complex to the house, leaving a blood trail back to the courtyard where police found ten 9mm shell casings and one .380 caliber shell casing.  Berry had been shot three times, once in the arm, once in the leg, and once in the back.  Police found Berry drifting in and out of consciousness, and moved him to a hospital, where he died.

2

(Footnote omitted.) <u>Benton v. State</u>, 301 Ga. 100, 100-101 (799 SE2d 743) (2017).

1.  Though not raised by Guffie as error, in accord with this Court's standard practice in appeals of murder cases, we have reviewed the record and find that the facts, as stated above, were sufficient to enable a rational trier of fact to find Guffie guilty beyond a reasonable doubt of the crimes for which he was convicted. <u>Jackson v. Virginia</u>, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2.  Guffie contends that his trial counsel provided ineffective assistance by failing to seek a continuance in response to his co-defendant's speedy trial demand and by failing to engage in plea negotiations with the prosecution.

To succeed on a claim of ineffective assistance, an appellant bears the heavy burden of showing "both that his counsel performed deficiently and that, but for the deficiency, there is a reasonable probability that the outcome of his trial would have been more favorable." <u>Slaton v. State</u>, 303 Ga. 651, 652 (814 SE2d 344) (2018).  See also <u>Strickland v. Washington</u>, 466 U. S. 668, 687, 694 (104 SCt 2052, 80 LE2d 674) (1984).

To prove deficient performance, one must show that his attorney

performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms. Courts reviewing ineffectiveness claims must apply a strong presumption that counsel's conduct fell within the wide range of reasonable professional performance. Thus, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course. If the defendant fails to satisfy either the "deficient performance" or the "prejudice" prong of the Strickland test, this Court is not required to examine the other.

(Citation and punctuation omitted.) Slaton, 303 Ga. at 652-653.

Turning first to Guffie's claim that his trial counsel should have sought a continuance in response to his co-defendant's speedy trial demand, we find this argument to be without merit. As the trial court explained in its detailed order, trial counsel testified at the motion for new trial hearing that, while he believed the speedy trial motion was ill-advised, the motion did not prejudice his preparations or performance in any way. Trial counsel explained at the hearing that he thoroughly discussed with Guffie the charges, Guffie's rights, and the trial strategy; moreover, trial counsel testified that he and Guffie were in agreement on that strategy. Trial counsel succinctly stated that he was "quite ready" for trial. Most fatal to Guffie's argument, however, is the dearth of evidence of prejudice; indeed, Guffie relies solely on the guilty verdict to

4

support his contention that he was prejudiced by trial counsel's alleged failures. Guffie has failed to demonstrate that his counsel was hampered by the consolidated time frame or that the outcome would have been different had trial counsel had more time to prepare.

Guffie also argues that trial counsel was ineffective for failing to engage in plea negotiations with the prosecution. However, as we have said before, such an argument "wholly fail[s] to demonstrate prejudice. There is no indication that the State would have agreed to a plea deal or that any such agreement would have been more favorable than the result at trial." Blount v. State, 303 Ga. 608, 613 (814 SE2d 372) (2018) ("Thus, to show prejudice, (Appellant) would need to demonstrate that it was reasonably probable that (the Government) would have offered him a particular plea deal, that the deal would have resulted in a sentence less than life in prison, and that the court would have accepted the deal's terms. Failure to show any one of those three facts is fatal to (Appellant's) claim." (punctuation omitted) (quoting Shnewer v. United States, 703 Fed. Appx. 85, 88 (3rd Cir. 2017))). Accordingly, this claim of ineffective assistance of counsel is also without merit.

3. Guffie next contends that the trial court erred in denying his motion to

sever.  In considering motions to sever, the trial court enjoys broad discretion and should assess "(1) the likelihood of confusion of the evidence and law; (2) the possibility that evidence against one defendant may be considered against the other defendant; and (3) the presence or absence of antagonistic defenses." (Citation and punctuation omitted.) Palmer v. State, 303 Ga. 810, 814 (III) (814 SE2d 718) (2018).  "In a capital case in which the death penalty is not sought, a trial court's decision not to sever the trials of co-indictees is reviewed for abuse of discretion," and the defendant who sought severance has the burden of clearly showing "that the joint trial was prejudicial and resulted in a denial of due process."  (Citation and punctuation omitted.)  Barge v. State, 294 Ga. 567 (3) (755 SE2d 166) (2014).

Guffie first contends that he was prejudiced by the prior convictions of co-defendant Benton.  However, Guffie and Benton were indicted for nearly identical charges,[2] the same law applied to both defendants, the evidence showed that they acted in concert, and both Guffie and Benton put forth the

---

[2] The only variance in the charges against Guffie and Benton was in the firearms charges and the felony murder charges predicated thereon. Guffie was indicted for possession of a firearm by a first offender probationer and felony murder predicated on the same, while Benton was indicted for possession of a firearm by a convicted felon, as well as felony murder predicated on the same.

same defense, i.e., that neither was involved in the shooting. Furthermore, Benton's trial counsel stipulated to the fact that Benton was a convicted felon, so no details regarding Benton's prior convictions were ever heard by the jury. Indeed, the trial court redacted the indictment, which was presented to the jury, to "eliminate any of the specifics about Mr. Benton's conviction so . . . the nature of the conviction [would not] be in the indictment." Simply put, Guffie has failed to demonstrate that the trial court abused its discretion in denying his motion to sever. See <u>Denny v. State</u>, 281 Ga. 114 (1) (636 SE2d 500) (2006).

Guffie also argues that the trial court should have taken into account the fact that he did not join his co-defendant's speedy trial motion and that severing the trial would have afforded Guffie and his trial counsel a more adequate opportunity to prepare for trial. Pretermitting the question of whether the trial court should have considered Guffie's refusal to join Benton's speedy trial motion, Guffie never presented this argument to the trial court either in his motion to sever or during the hearing on same. As a result, Guffie has waived this argument for purposes of appeal. See <u>Holloman v. State</u>, 293 Ga. 151 (5) (744 SE2d 59) (2013).

<u>Judgment affirmed</u>. Hines, C. J., Melton, P. J., Benham, Nahmias,

Blackwell, Boggs, and Peterson, JJ., concur.

Decided August 27, 2018.

Murder. Fulton Superior Court. Before Judge McBurney.

Patrick G. Longhi, for appellant.

Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, F. McDonald Wakeford, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ashleigh D. Headrick, Assistant Attorney General, for appellee.